[No. B077124. Second Dist., Div. Five. Sept. 29, 1994.]

CONSTANCE JEAN CHATWOOD HULL, Plaintiff and Appellant, v.
CENTRAL PATHOLOGY SERVICE MEDICAL CLINIC et al.,
Defendants and Respondents.

## COUNSEL

David M. Harney, Thomas Kallay, Esner, Marylander, Zakheim & Higa, Stuart B. Esner and Grant Marylander for Plaintiff and Appellant.

Bonne, Bridges, Mueller, O'Keefe & Nichols, Kenneth Mueller, John Aitelli, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole, Melinda W. Ebelhar, John D. McCurdy, D. Scott Elliot and Bryan R. Reid for Defendants and Respondents.

## OPINION

**ARMSTRONG, J.**—Plaintiff Constance Jean Chatwood Hull appeals the judgment of dismissal entered by the trial court after it sustained the demurrers of defendants Elizabeth Irwin, M.D. and Elizabeth Irwin, M.D., Inc. (herein together referred to as Dr. Irwin) and Central Pathology Service Medical Clinic (the Laboratory).

### FACTS

The facts, as alleged in the complaint, are as follows: In October 1987, plaintiff became a patient of Dr. Irwin. In June 1988, Dr. Irwin took a pap smear from plaintiff, and sent the smear to the Laboratory for analysis. The

Laboratory failed to read the slide properly, and thus failed to diagnose plaintiff's cervical cancer.

In early 1989, the Laboratory became the subject of a government investigation and received intense media attention regarding its high rate of inaccurate pap smear readings.

In August of 1989, plaintiff returned to Dr. Irwin for another pap smear. On September 5, plaintiff was advised that her pap smear revealed a malignancy, and on September 6, while in the doctor's office, she inquired of Dr. Irwin as to whether her 1988 pap smear had been sent to the Laboratory. Dr. Irwin told plaintiff that she did not use the Laboratory.

Five days later, plaintiff learned that Dr. Irwin had lied to her about which lab had read her 1988 pap smear. Plaintiff suffered extreme emotional distress upon learning that her doctor had lied to her. Eight days later she underwent a hysterectomy, performed by another physician unassociated with Dr. Irwin.

Based upon the foregoing events, on March 9, 1990, plaintiff sued each of the defendants for medical malpractice, and her husband joined in her suit, stating a cause of action for loss of consortium (Hull v. Central Pathology Service Medical Clinic (Super. Ct. L.A. County) 1990, No. NWC054572 (Hull I)). On February 7, 1991, two months before the scheduled trial date, plaintiff filed a motion for leave to amend her complaint to add causes of action for fraud and for intentional infliction of emotional distress, with accompanying claims for punitive damages. Defendants opposed the motion, arguing that the amendment was barred as untimely by Code of Civil Procedure[1] section 425.13, subdivision (a).[2] The trial court granted the motion, ruling that the amendment was not subject to section 425.13 because it alleged causes of action for intentional torts rather than for professional negligence. Defendants then sought a writ of mandate from the Court of

---

[1]Further statutory references are to this code unless otherwise indicated.

[2]Section 425.13, subdivision (a) provides: "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier."

Appeal, again arguing that section 425.13 precluded the court's grant of leave to amend to file the requested amendment. This court denied defendants' writ petition, and the Supreme Court granted review.

The question before the Supreme Court was whether plaintiff's claims for fraud and intentional infliction of emotional distress constituted an "action for damages arising out of the professional negligence of a health care provider," the language of section 425.13. (*Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 187 [10 Cal.Rptr.2d 208, 832 P.2d 924].) The court held that ". . . whenever an injured party seeks punitive damages for an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such, then the action is one 'arising out of the professional negligence of a health care provider,' and the party must comply with section 425.13(a)." (*Id.* at pp. 191-192.) The court concluded that these intentional tort claims were "directly related to the manner in which defendants provided professional services," and were thus subject to the requirements of section 425.13. (3 Cal.4th at pp. 192-193.) Because the trial court had incorrectly concluded that section 425.13 did not apply to the causes of action alleged in plaintiffs' proposed amendment, the Supreme Court instructed this court to remand the case to the trial court with instructions that it vacate its order granting leave to amend and that it conduct "further proceedings in accordance with the views expressed herein." (3 Cal.4th at p. 193.) Accordingly, on November 25, 1992, the trial court in Hull I issued a minute order vacating its earlier order and denying plaintiffs' motion to amend.

On February 25, 1993, plaintiff filed this second action against defendants, alleging causes of action for intentional infliction of emotional distress, conspiracy to inflict emotional distress, and breach of oral contract, again seeking punitive damages (Hull v. Central Pathology Service Medical Clinic (Super. Ct. L.A. County (1993) No. LC020621 (Hull II)).[3] Defendants demurred on several grounds, including failure to comply with section 425.13 and the bar of the statute of limitations, and also moved to strike the punitive damages allegations and prayer. The trial court sustained the demurrer without leave to amend, ruling as follows: "Pursuant to the decision in *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court*, (1992) 3 Cal.4th 181 [10 Cal.Rptr.2d 208, 832 P.2d 924], plaintiffs could have brought a further motion to amend their Complaint in the 'Hull I' action . . . in accordance with the views expressed by the California Supreme Court therein. The facts pled in the present Complaint are the same as those pled in the original action. Plaintiff could have and should have raised these matters in her first action . . . in accordance with the *Central Pathology Service*

---

[3]Mrs. Hull did not state a fraud cause of action in Hull II.

*Medical Clinic, Inc.* decision. Based upon the foregoing ruling, defendants' Motion to Strike is rendered moot." Plaintiff appeals that ruling.

## DISCUSSION

The causes of action for both intentional infliction of emotional distress and conspiracy to inflict emotional distress are subject to the one-year statute of limitations contained in section 340, subdivision (3). According to the complaint, plaintiff learned of defendants' alleged misrepresentation on September 11, 1990; thus the statute of limitations expired on September 11, 1991, unless tolled. In addition, plaintiff's cause of action for breach of oral contract is governed by the two-year limitations period set forth in section 339, subdivision 1. Since the complaint alleges that plaintiff learned on December 6, 1989 that her 1988 pap smear had been misread, the statute of limitations for the breach of contract cause of action expired on December 6, 1991, absent tolling of the limitations period.

Mrs. Hull maintains that, although Hull II was filed on February 25, 1993, after the expiration of the statute of limitations for each of the causes of action, the actions were timely filed by application of the provisions of section 355.[4] That section provides: "If an action is commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal other than on the merits, a new action may be commenced within one year after the reversal." Plaintiff argues that, because the Supreme Court's reversal of the order granting leave to amend in Hull I was based upon technical grounds, and not upon the substantive merits of the action, section 355 applies. Thus, plaintiff had one year from the reversal of the order granting leave to amend to file her new complaint. Mrs. Hull further argues that, even if section 355 does not technically apply to this case, the doctrine of equitable tolling announced in *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399 [154 P.2d 399] precludes dismissal of Hull II based on the statute of limitations.

---

[4]Defendants counter with a lengthy exposition on the relation-back theory. That theory holds that a plaintiff who has timely filed a complaint may amend that complaint to include new theories of recovery so long as those theories "relate back" to the same general set of facts which prompted the original filing.That theory has no application here, however, where plaintiff did not amend her complaint to allege the new theories of intentional infliction of emotional distress and breach of contract, but filed an entirely separate action.

█ Section 355, as adopted by the Legislature, provides an extremely narrow exception to the sometimes harsh dictates of the statute of limitations. (See § 312.)[5] Justice Cardozo expressed the rationale of the analogous New York statute (on which section 355 was based), as follows: "The statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits." (*Gaines* v. *City of New York* (1915) 215 N.Y. 533, 539 [109 N.E. 594, 596].)

Section 355 by its terms applies only when a judgment favorable to the plaintiff is reversed on appeal other than on the merits. However, in the usual case, when a judgment is reversed on appeal without qualification, the cause is remanded for a new trial on all of the issues presented by the pleadings. (*Green* v. *Brown* (1953) 115 Cal.App.2d 317, 319 [251 P.2d 1007]; see generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 626, p. 607, and cases cited therein.) Thus, in the usual situation, a plaintiff will have no need to file a new action, and thus no need for recourse to section 355. Rather, section 355 is implicated only in the uncommon situation where a judgment in favor of the plaintiff is reversed on appeal for procedural reasons which require the filing of a new action. (See 3 Witkin, Cal. Procedure, *supra*, Actions, § 508, pp. 534-535.) Perhaps because the scope of section 355 as enacted is so severely limited, we have been directed to no cases which arise in the situation contemplated by the literal terms of the statute; that is, where a plaintiff filed a second lawsuit alleging the same cause of action on which the plaintiff had received a favorable judgment, but which judgment had been reversed on appeal other than on the merits.

Faced with an equitable statute that can seldom be invoked to do equity, the courts have crafted a rule of equitable tolling which satisfies the rationale of section 355 as expressed by Justice Cardozo. Thus, in *Bollinger* v. *National Fire Ins. Co.*, *supra*, 25 Cal.2d 399, the Supreme Court was presented with a plaintiff who did not meet the technical requirements of section 355 because a judgment in his favor had not been reversed on appeal. However, because the rationale of section 355 applied equally to the plaintiff before it, the court permitted the plaintiff to pursue his action in spite of the fact that the statute of limitations had expired.

*Bollinger* involved an action on a fire insurance policy which was instituted within the time specified in the policy. Due to an erroneous ruling by the trial court, plaintiff was nonsuited for filing a premature lawsuit. The plaintiff then immediately filed a new lawsuit but, because the defendant had

---

[5]Section 312 provides: "Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute."

delayed the progress of the first suit, the new action was filed after the statute of limitations had expired. Since a judgment in plaintiff's favor had not been reversed on appeal, section 355 did not apply. The court in *Bollinger* determined, however, that equity required that the plaintiff be permitted to pursue his action since (1) it was the error of the trial court, and no action on the part of the plaintiff, which accounted for plaintiff's predicament; (2) had the defendant not delayed in bringing the action to trial, plaintiff would have been able to file the second action within the statute of limitations; and (3) the plaintiff had done all within his power to diligently prosecute his claim. (25 Cal.2d at p. 410.) For these reasons, equity required that the running of the statute of limitations be suspended, notwithstanding the fact that the requirements of section 355 were not met. (25 Cal.2d at p. 411.)

The *Bollinger* rule of equitable tolling has been applied, and indeed expanded, in subsequent cases. Thus, in *Addison* v. *State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224 [578 P.2d 941], the Supreme Court held that a plaintiff who, possessing several legal remedies, reasonably and in good faith pursues one designed to lessen the extent of his injuries or damages, should be relieved of the bar of the statute of limitations provided that the defendant has had timely notice of the claim and is not prejudiced by application of the doctrine. Thus, where the plaintiff, having both federal and state law claims, timely filed an action in federal court, and that court dismissed the federal claims and declined pendent jurisdiction of the state claims, the court permitted the subsequent suit filed in state court notwithstanding the fact that the statute of limitations had run. (*Id.* at pp. 317-319.) Likewise, in *Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81], where the plaintiff had promptly sought worker's compensation benefits and filed a lawsuit one month after the Workmen's Compensation Appeals Board had denied those benefits, the Supreme Court held that the suit was timely even though the statute of limitations had expired. (*Id.* at p. 420; see also *Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1 [262 Cal.Rptr. 716] [plaintiff timely filed suit in state court; defendant improperly removed action to federal court; plaintiff voluntarily dismissed suit from federal court and filed new action in state court; *Bollinger* applied to preclude bar of statute of limitations in second action]; *Nichols* v. *Canoga Industries* (1978) 83 Cal.App.3d 956 [148 Cal.Rptr. 459] [*Bollinger* rule applied to toll statute of limitations on state claims upon filing of action in federal court]; *Schneider* v. *Schimmels* (1967) 256 Cal.App.2d 366 [64 Cal.Rptr. 273] [first action brought in Colorado court; plaintiff unable to serve defendant after she moved to California; subsequent suit in California timely though statute of limitations had run].)

The Supreme Court declined to apply the *Bollinger* rule to a plaintiff who had not diligently pursued his initial action against the defendants in *Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353 [142 Cal.Rptr. 696, 572 P.2d 755]. There, plaintiff's first suit against defendants was dismissed for failure to serve it within three years. Although the statute of limitations had since lapsed, the plaintiff claimed that his second action was timely because the statute had been tolled during the pendency of the first action. The Supreme Court rejected this argument, reiterating the requirement of earlier cases that three elements be present before the *Bollinger* rule of equitable tolling will apply: (1) the plaintiff must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a judicial forum for resolution of the claim must be attributable to forces outside the control of the plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine (which is normally not a factor since the defendant will have had notice of the first action). (*Wood* v. *Elling Corp.*, *supra*, at pp. 361-362; see also *Appalachian Ins. Co.* v. *McDonnell Douglas Corp.*, *supra*, 214 Cal.App.3d 1, 41.)

 Applying the foregoing analysis to the case before us, it is clear that plaintiff did not satisfy the three requirements necessary for application of the *Bollinger* rule. First, she did not diligently pursue her claim for emotional distress and breach of contract. Rather, with full knowledge of all of the facts underlying these causes of actions, plaintiff filed Hull I without seeking redress for defendants' breach of these rights and duties. Secondly, while plaintiff was unable to amend her complaint in Hull I to include punitive damages due to her failure to comply with the time limits contained in section 425.13, she was presumably free to seek leave to amend to allege the causes of action pleaded in Hull II, albeit without a prayer for punitive damages.[6] Thus, unlike the plaintiff in *Bollinger*, Mrs. Hull was not denied a trial on the merits because of an error on the part of the trial court, but due to her own failure to comply with the provisions of the Code of Civil Procedure or to amend her complaint to state causes of action for emotional distress and breach of contract without a prayer for punitive damages.[7]

---

[6]While we do not reach the point, it is clear that the Supreme Court's holding in *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court*, *supra*, 3 Cal.4th at page 187 (that all of Mrs. Hull's causes of action against Dr. Irwin and the Laboratory alleged in Hull I and in the proposed amendment thereto arise out of the rendition of professional services and are thus subject to the requirements of section 425.13), applies equally to the causes of action alleged in Hull II.

[7]Because plaintiff did not meet the first two elements justifying application of the *Bollinger* rule, we need not determine whether the filing of the proposed amendment to Hull I put defendants on notice of the claims in Hull II sufficient to meet the third *Bollinger* requirement of lack of prejudice to the defendant.

In sum, plaintiff did not satisfy the express prerequisites for application of the *Bollinger* rule of equitable tolling. The statute of limitations therefore bars each of the causes of action alleged in Hull II, as the trial court ruled.[8]

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied October 17, 1994, and appellant's petition for review by the Supreme Court was denied December 15, 1994.

---

[8]Plaintiff characterizes the trial court's ruling as based on an improper finding that the causes of action in Hull I and Hull II were subject to compulsory joinder. To the contrary, the trial court's comments make clear that it concluded that, since plaintiff failed to amend her complaint to allege intentional infliction of emotional distress and breach of contract without a prayer for punitive damages, but chose instead to file a new complaint seeking such damages, the *Bollinger* equities were not with her.