[No. C052537. Third Dist. July 24, 2007.]

PETE ROSE, Plaintiff and Appellant, v.
HARRY E. HUDSON, JR., Defendant and Respondent.

COUNSEL

Law Office of Mark E. Merin, Mark E. Merin, Jeffrey I. Schwarzschild; Law Office of Fred J. Hiestand and Fred J. Hiestand for Plaintiff and Appellant.

Hansen, Culhane, Kohls, Jones & Sommer and Kevin R. Culhane for Defendant and Respondent.

OPINION

**SIMS, Acting P. J.**—In *Wiley v. County of San Diego* (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*), the California Supreme Court held that when a former criminal defendant sues his or her attorney for legal malpractice ("criminal malpractice"), the former client's "actual innocence [of the underlying criminal charge] is a necessary element of the plaintiff's cause of action." (*Id.* at p. 545.)

In *Coscia v. McKenna & Cueno* (2001) 25 Cal.4th 1194 [108 Cal.Rptr.2d 471, 25 P.3d 670] (*Coscia*), the California Supreme Court reaffirmed *Wiley,*

*supra,* 19 Cal.4th 532, and then held that the client's innocence must be shown by postconviction exoneration in the form of a final judicial disposition of the criminal case. (*Coscia, supra,* at pp. 1197–1198, 1199–1205.) *Coscia* also reaffirmed prior case law holding that the limitations period begins to run, subject to tolling, on the date the attorney committed an act or omission amounting to professional negligence—which would necessarily occur during the attorney's representation of the client. (*Id.* at p. 1210.) Acknowledging that the statute of limitations on the legal malpractice action will in most cases expire before the client can obtain postconviction relief from the criminal conviction, *Coscia* concluded the client should file the civil complaint within the limitations period, and the trial court should stay the malpractice case while the client diligently pursues postconviction relief in the criminal case. (*Id.* at pp. 1206–1211.)

■ For reasons that follow, we conclude that *Coscia* is subject to the general and prevailing rule that judicial decisions are applied retroactively. " 'The general rule that judicial decisions are given retroactive effect is basic in our legal tradition.' " (*Brennan v. Tremco, Inc.* (2001) 25 Cal.4th 310, 318 [105 Cal.Rptr.2d 790, 20 P.3d 1086], quoting *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978 [258 Cal.Rptr. 592, 772 P.2d 1059].)

In this legal malpractice case against plaintiff's former criminal defense lawyer, plaintiff Pete Rose appeals from a judgment of dismissal following the sustaining of a demurrer without leave to amend, in favor of defendant Harry E. Hudson, Jr. The demurrer was sustained on the ground the complaint was time-barred by Code of Civil Procedure section 340.6.[1] Rose[2] contends the limitations period was applied pursuant to *Coscia, supra,* 25 Cal.4th 1194, and argues the case should be applied prospectively, and he

---

[1] Undesignated section references are to the Code of Civil Procedure.

Section 340.6, subdivision (a), provides: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services[,] shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred; [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

[2] Since Rose is the plaintiff here but was the defendant in the criminal case, we refer to the parties by name rather than party status.

should be allowed a reasonable time to satisfy the limitations period. Because we disagree that *Coscia* should be applied prospectively only, we shall affirm the judgment of dismissal.

## BACKGROUND

Rose's complaint, filed on September 15, 2005, alleged a single cause of action for legal malpractice in Hudson's legal representation of Rose in a criminal case wherein Rose was convicted in November 1995.[3] The conviction was vacated in October 2004.

Thus, the complaint alleged Hudson, an attorney, negligently caused damage by acts or omissions in "or about from December 1994, through and including April 1996." The complaint alleged:

"In or about December 1994, Hudson was appointed by the county of San Joaquin to represent [Rose] . . . who was arrested and charged with various criminal offenses including kidnap and rape of a 13 year old girl.

"Defendant Hudson represented Rose so negligently and below the applicable standard that Rose, although innocent of all charges, was convicted in November 1995, and spent ten (10) years in county jail and state prison until his conviction was vacated on October 29, 2004, and he was released. An Order of Exoneration declaring Rose factually innocent was issued on February 18, 2005.[4]

"As a direct and proximate result of Hudson's negligence, Rose was injured and suffered damages, including, but not limited to, deprivation of liberty, loss of earnings, mental and emotional distress, and deprivation of contact with his children."

Hudson demurred to the complaint on the ground the complaint (filed almost 10 years after the criminal conviction) was time-barred by both the

---

[3] Hudson's brief occasionally misstates the conviction date as 1994. Rose's brief says he was convicted in April 1996. We use the conviction date alleged in the complaint—November 1995. The complaint alleged Hudson, by acts or omissions, caused damage to Rose between December 1994 and April 1996. Even if the limitations period started in 1996, the complaint would still be untimely.

[4] Rose includes in his appellant's appendix documents that were not part of the trial record, indicating he was exonerated by a DNA test that was unavailable at the time of his criminal trial. We denied both Hudson's motion to strike the documents and Rose's request for judicial notice or augmentation of the record with the documents. Rose's reply brief cites a law review article, the topic of which is his wrongful criminal conviction. (Comment, *Anatomy of a Miscarriage of Justice: The Wrongful Conviction of Peter J. Rose* (2006) 37 Golden Gate U. L.Rev. 7.)

one-year and four-year alternative limitations periods of section 340.6 (fn. 1, *ante*). Hudson argued the actual injury element of malpractice occurred when Rose was convicted in November 1995. Hudson argued that matters of which the court could take judicial notice demonstrated that Rose was indisputably aware of the alleged malpractice no later than November 1996, when he filed an appellate brief claiming ineffective assistance of counsel on multiple grounds.[5] Even factoring in the maximum two-year tolling for incarceration (§ 352.1),[6] and even assuming the four-year limitations period applied, the complaint should have been filed no later than November 2001, and the September 2005 filing was too late. Hudson argued a malpractice cause of action accrues upon the date of conviction, and pursuant to *Coscia, supra*, 25 Cal.4th 1194, the statute of limitations is not tolled while the criminal defendant seeks postconviction relief.

In opposition, Rose argued he had no cause of action until his innocence was established, and *Coscia* is either inapposite or wrongly decided.

The trial court sustained the demurrer without leave to amend, citing section 340.6 and *Coscia, supra*, 25 Cal.4th 1194.

Rose appeals from the ensuing judgment of dismissal.

## DISCUSSION

### I. *Standard of Review*

This appeal from a judgment of dismissal following the trial court's sustaining of a demurrer without leave to amend presents questions of law, which we review de novo. (*Walker v. Allstate Indem. Co.* (2000) 77 Cal.App.4th 750, 754 [92 Cal.Rptr.2d 132].)

---

[5] Hudson submitted a portion of the appellate brief and Rose's subsequent petition for rehearing and petition to the California Supreme Court for review—indicating Rose lost in the Court of Appeal. However, Hudson did not submit a copy of our opinion in the appeal of the criminal case, and therefore Hudson did not show the reason the appeal was rejected, i.e., whether there was no deficient performance or no prejudice. Nevertheless, the pertinent point is that Rose believed Hudson performed deficiently. Rose's appellate brief acknowledges his appeal and subsequent petitions raised issues of ineffective assistance of counsel and were rejected by the courts.

[6] Section 352.1, subdivision (a), provides: "If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335) [actions other than for recovery of real property], is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."

## II. *The Complaint Was Untimely*

Rose argues *Coscia, supra,* 25 Cal.4th 1194, adversely affected his right to file his legal malpractice action by changing both the elements of the cause of action and the limitations period. Therefore, argues Rose, due process and sound public policy dictate that *Coscia*'s "new rule" be applied prospectively and that Rose be allowed a "reasonable time" to satisfy the limitations period. Rose contends this "reasonable time" should run from the timely pursuit of the first newly created postconviction remedies available to him after *Coscia*, including remedies based on new scientific and technological advances. As we shall explain, Rose's argument is without merit.

The criminal defendant in *Coscia* (the client) pled guilty in December 1994, in federal court, to one felony count of conspiracy to violate federal securities laws. (*Coscia, supra,* 25 Cal.4th at p. 1198.) In March 1996, he was sentenced to two years' probation. In March 1997, he filed a legal malpractice action against his lawyer and her law firm, alleging he was injured by her negligent advice. The lawyer demurred on the grounds of the statute of limitations and collateral estoppel. The trial court sustained the demurrer without leave to amend on the ground that the criminal conviction precluded relief in the malpractice case under the principles of collateral estoppel. (*Ibid.*)

In the intermediate appellate court, the client sought to amend the complaint to allege (1) he entered into the plea agreement despite his innocence of the criminal charges, and (2) he accepted the plea in reliance on his lawyer's advice that it would be futile to ask the prosecutor to agree to a misdemeanor plea in exchange for information the client had about other ongoing securities fraud. (*Coscia, supra,* 25 Cal.4th at p. 1198.) The intermediate appellate court held the client should be allowed to amend the complaint, and making exoneration a prerequisite to the malpractice action would render most criminal malpractice actions untimely under the limitations period. (*Id.* at p. 1199.)

■ The California Supreme Court held, contrary to the Court of Appeal, that exoneration by postconviction relief is a prerequisite to recovery for legal malpractice arising out of a criminal proceeding, even where a plea made collateral estoppel inapplicable (though remand was appropriate to allow the client to plead innocence and seek a stay of proceedings pending pursuit of postconviction remedies). (*Coscia, supra,* 25 Cal.4th at pp. 1199, 1204.) *Coscia* explained as follows:

■ The elements of a legal malpractice action arising from a *criminal* proceeding are (1) proof of actual innocence; (2) the attorney's duty to use

such skill, prudence, and diligence as members of the profession commonly possess and exercise; (3) breach of that duty; (4) a proximate causal connection between the breach and the resulting injury; and (5) actual loss or damage resulting from the lawyer's negligence. (*Coscia, supra*, 25 Cal.4th at pp. 1199–1200.) "[P]ublic policy considerations require that only an innocent person wrongly convicted be deemed to have suffered a legally compensable harm. Unless a person convicted of a criminal offense is successful in obtaining postconviction relief, [public policy] preclude[s] recovery in a legal malpractice action." (*Id.* at p. 1201.) The requirement of exoneration by postconviction relief is "firmly grounded in the unique constitutional and statutory guarantees provided to criminal defendants. . . . 'Unlike in the civil litigation area, a client does not come before the criminal justice system under the care of his counsel alone; he comes with a full panoply of rights, powers, and privileges. These rights and privileges not only protect the client from abuses of the system but are designed to protect the client from a deficient representative. Thus, whereas in a civil matter a case once lost is lost forever, in a criminal matter a defendant is entitled to a second chance (perhaps even a third or fourth chance) to insure that an injustice has not been committed.' " (*Id.* at p. 1203.)

█ *Coscia, supra*, 25 Cal.4th 1194, concluded, "a plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel." (*Coscia, supra*, 25 Cal.4th at p. 1205, fn. omitted.)

*Coscia* "next consider[ed] the effect of the foregoing requirement of exoneration by postconviction relief upon the application of the relevant statute of limitations for legal malpractice actions arising from criminal proceedings." (*Coscia, supra*, 25 Cal.4th at p. 1206.) The Supreme Court noted the Court of Appeal in Coscia's case declined to impose an exoneration requirement because in most cases the malpractice statute of limitations will expire before the convicted individual obtains postconviction relief.[7] (*Id.* at p. 1207.) *Coscia* said: "The example of the practice in other jurisdictions,

---

[7] Thus, the Supreme Court's discussion of the statute of limitations was not dictum, though the demurrer in the trial court was sustained on a different ground, i.e., that the plaintiff's criminal conviction precluded relief under principles of collateral estoppel. (*Coscia, supra*, 25 Cal.4th at p. 1198.) The demurrer asserted the statute of limitations as an alternative ground, though the opinion does not describe what, if any, limitations problem existed. (*Ibid.*) Even if it were dictum, dictum of a higher court is to be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. (*County of San Bernardino v. Superior Court* (1994) 30 Cal.App.4th 378, 388 [35 Cal.Rptr.2d 760].) *Coscia*'s five-page analysis meets this standard. (*Coscia, supra*, 25 Cal.4th at pp. 1206–1211.)

however, reveals that the requirement of postconviction relief, as a prerequisite to proving legal malpractice arising out of a criminal proceeding, need not result in a technical forfeiture of legitimate malpractice claims." (*Ibid.*) *Coscia* observed that some jurisdictions have held that the limitations period does not commence until the plaintiff has obtained postconviction relief, because the cause of action does not accrue for limitations purposes until that time. (*Ibid.*) Other jurisdictions have adopted a "two-track approach." (*Id.* at p. 1208.) They reject as mere " 'legal fiction' " the rule that a wrongly convicted criminal defendant suffers no cognizable harm, and the malpractice claim does not accrue, until he or she has obtained appellate relief. (*Ibid.*) To avoid the statute of limitations problem, the client might be required to initiate the malpractice suit prior to resolution of all postconviction proceedings, in which case the trial court should, upon motion of either party, stay the malpractice suit pending the client's diligent effort to obtain resolution of postconviction remedies. (*Id.* at p. 1209.)

■ *Coscia, supra,* 25 Cal.4th 1194, chose the two-track approach. *Coscia* said the jurisdictions that rely on the legal fiction "are inconsistent with [the California Supreme Court's] previous decisions addressing the subject of accrual and actual injury under . . . section 340.6, subdivision (a), including *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* [(1998)] 18 Cal.4th 739 [76 Cal.Rptr.2d 749, 958 P.2d 1062]. This statute provides that the limitations period begins to run, subject to tolling, on the date the attorney committed an act or omission amounting to professional negligence. An action for attorney malpractice 'shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from *the date of the wrongful act or omission,* whichever occurs first.' [Citation.] The wrongful act or omission giving rise to a criminal malpractice action necessarily occurred during the course of the attorney's representation of the client—not at some time thereafter, when the client obtained postconviction relief. [¶] With regard to tolling, [the California Supreme Court] decline[d] to adopt the legal fiction that an innocent person convicted of a crime suffered no actual injury until he or she was exonerated through postconviction relief. . . . '[A] criminal conviction—with its attendant financial and social ramifications, incarceration, probation, fines or other damaging consequences—would constitute appreciable harm, or "actual injury" ' within the meaning of [section 340.6]." (*Coscia, supra,* 25 Cal.4th at pp. 1209–1210.) The policy of protecting parties from having to defend stale claims "is of particular concern in the [criminal malpractice] context, when years, even decades, may elapse before the wrongfully convicted criminal defendant obtains postconviction relief." (*Id.* at p. 1210.)

■ *Coscia* concluded, "the two-track approach . . . is most consistent with the requirements of . . . section 340.6, subdivision (a), and the interests

of fairness to both plaintiffs and defendants in criminal malpractice actions. Thus, the plaintiff must file a malpractice claim within the one-year or four-year limitations period set forth in . . . section 340.6, subdivision (a). Although such an action is subject to demurrer or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period in which such a plaintiff timely and diligently pursues postconviction remedies. . . . By this means, courts can ensure that the plaintiff's claim will not be barred prematurely by the statute of limitations. This approach at the same time will protect the interest of defendants in attorney malpractice actions in receiving timely notice and avoiding stale claims." (*Coscia, supra,* 25 Cal.4th at pp. 1210–1211.)

*Coscia* remanded to allow the client to amend the complaint to allege actual innocence and stated the trial court should stay proceedings in the malpractice case as necessary to permit the client timely pursuit of postconviction remedies. (*Coscia, supra,* 25 Cal.4th at p. 1211.)

Thus, under *Coscia,* Rose's 2005 malpractice complaint was untimely, as follows: The actual injury element was met no later than November 1995, when Rose was convicted. Even assuming for the sake of argument that it could not be said he knew or should have known of Hudson's allegedly deficient performance at the time of conviction, Rose clearly knew he was claiming attorney negligence no later than November 1996, when he filed an appellate brief in the criminal case arguing ineffective assistance of counsel, including an argument about the serology evidence. The appellate brief was filed by a different defense attorney, indicating Hudson no longer represented Rose in the criminal matter. Thus, the one-year limitations period of section 340.6 (fn. 1, *ante*) began no later than November 1996. Factoring in the two-year tolling due to Rose's incarceration, his complaint had to be filed by November 1999, and the 2005 complaint was too late. Even assuming for the sake of argument that the four-year period of section 340.6 applied, the complaint had to have been filed by 2002 (1996 plus four years plus two years due to incarceration); the 2005 complaint was still too late.

Insofar as Rose thinks *Coscia, supra,* 25 Cal.4th 1194, was wrongly decided, the argument fails, as we are bound to follow the precedent of the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Insofar as Rose argues *Coscia* should not be "retroactively" applied to him, the argument fails.

Thus, Rose argues retroactive application of *Coscia* to his case would violate due process. He cites *Aronson v. Superior Court* (1987) 191

Cal.App.3d 294 [236 Cal.Rptr. 347], which said due process concerns could arise when the *Legislature* enacts *legislation* shortening a limitations period. (*Id.* at pp. 296–297.) However, since *Aronson* dealt with retrospectivity of *legislation*, it does not control this case, because in this case Rose complains a *court opinion* (*Coscia*) is being retroactively applied. Court opinions are different from legislation because courts declare law rather than make law. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 978, p. 1029.) Nevertheless, a similar rule applies to court opinions, as follows: "The rule that judicial decisions are generally applied retroactively is well established. [Citations.] The rule is 'basic in our legal tradition.' [Citations.] However, the rule is not absolute. [Citations.] It is subject to two narrow exceptions, based on considerations of fairness and public policy. [Citations.] The Supreme Court has held: 'A court may decline to follow the standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law.' [Citation.]" (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1305–1306 [71 Cal.Rptr.2d 122].) A court decision does not announce a new rule of law if it does not "overrule or disagree with any unanimous and unquestioned body of California decisional authority." (*Id.* at p. 1306.)

Here, it was up to the California Supreme Court to decide whether to make *Coscia* prospective only. It did not do so.

Moreover, *Coscia, supra,* 25 Cal.4th 1194, did not overrule or disagree with any California decisional authority. Since *Coscia* did not overrule any prior California authority, Rose cannot reasonably have relied on any prior California authority.

Rose suggests *Coscia* created a new rule of law because, before *Coscia*, it was well settled that a statute of limitations generally begins to run upon the occurrence of the last element essential to the cause of action (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421]), and *Wiley, supra,* 19 Cal.4th at page 534, said actual innocence was a "necessary element" of criminal malpractice. Rose contends that, up until the 2001 *Coscia* opinion, he "had every reason to believe,[8] based on *Wiley v. County of San Diego, supra,* 19 Cal.4th 532, that the 'accrual' date for his legal malpractice action . . . was when the last 'element' of the action itself was satisfied: when a judgment of exoneration was entered for him." Rose argues that, because *Wiley* made actual innocence an "element" of criminal malpractice, he had no cause of action and was precluded

---

[8] Of course, the trial court record in this demurrer does not indicate that Rose actually relied on pre-*Coscia* law.

from filing his lawsuit until his actual innocence was judicially recognized in the criminal case. Rose argues *Coscia* created a new rule because it held for the first time, in contrast to *Wiley*, that a criminal malpractice plaintiff cannot, as with other general tort actions, wait until the "elements" of the cause of action are satisfied before filing suit, but must instead file the lawsuit and seek a stay of the malpractice action until all postconviction remedies are concluded.

Rose's arguments fail. He confuses the existence of the element of "actual innocence" with the (*Coscia*-mandated) exoneration evidence to prove it. However, his actual innocence existed even before his criminal conviction. *Wiley* did not say that an exoneration order was an element of criminal malpractice, nor did it say that an exoneration order was the only way to prove actual innocence. To the contrary, *Wiley* said it need not decide the point. (*Wiley, supra,* 19 Cal.4th at pp. 536–537, fn. 2.) In *Wiley,* the client's criminal conviction was overturned on habeas corpus on the grounds that a key witness had lied and that defense counsel's inadequate investigation had deprived the client of exculpatory witnesses. (*Id.* at p. 535.) The prosecutor then dismissed the charges. (*Ibid.*) Thus, the overturning of the criminal conviction did not prove actual innocence. In the malpractice trial, the trial court determined the client was not required to prove his innocence. (*Ibid.*) The jury found in favor of the client. The Court of Appeal agreed proof of innocence was not required but reversed the judgment on other grounds. (*Ibid.*) The Supreme Court held actual innocence is required to recover in a criminal malpractice case, and on retrial the client "will have to prove by a preponderance of the evidence that he did not commit battery with serious bodily injury." (*Id.* at p. 545.)

We conclude Rose fails to show that *Coscia, supra,* 25 Cal.4th 1194, created a new rule which should not be applied to his case.

Rose quotes from *Coscia* that the Supreme Court had "no occasion in the present case to determine whether there might be exceptional circumstances—for example, where the plaintiff establishes that habeas corpus or other postconviction relief is unavailable and that he or she could not reasonably have been expected to have pursued such measures—under which a plaintiff should be afforded an opportunity to establish actual innocence in the malpractice action itself." (*Coscia, supra,* 25 Cal.4th 1194, 1205, fn. 4.) Rose argues the "exceptional circumstance" in this case is that he was exonerated by a new remedy—DNA testing that was not previously available. However, *Coscia* was addressing the point that an appellate court's rejection of a claim of ineffective assistance of counsel in an appeal of the criminal case may preclude the client from maintaining a civil malpractice action, but postconviction relief may be obtained on grounds other than attorney ineffectiveness, and such relief does not bar a civil malpractice action. (*Ibid.*) Thus,

*Coscia*'s reference to "exceptional circumstances" did not open the door to extension of the statute of limitations.

As indicated, Rose repeatedly points out his exoneration came about because of a new postconviction remedy *after Coscia, supra,* 25 Cal.4th 1194, was filed in 2001. Thus, Rose cites Penal Code section 1405, which beginning in 2001 entitled incarcerated persons to ask the criminal court for a DNA test, and a 2002 amendment which entitled indigent persons to appointment of counsel for this purpose. (Stats. 2000, ch. 821, § 1; Stats. 2001, ch. 943, § 1.) As indicated, Rose's appellate brief cites documents concerning DNA testing which he improperly included in his appellant's appendix, which are not part of the trial court record. We have denied Rose's request for judicial notice of the documents indicating he was exonerated by a DNA test. We therefore need not address this matter.

Rose makes an incoherent argument regarding an inapplicable statute—section 355. Section 355 provides: "If an action is commenced within the time prescribed therefor, and a judgment therein for the plaintiff be reversed on appeal other than on the merits, a new action may be commenced within one year after the reversal." On its face, this statute has no application, because Rose never filed a timely malpractice action. Rose argues *Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399 at pages 409 through 410 [154 P.2d 399] (*Bollinger*), held that section 355 sets forth an alternative basis for applying equitable tolling beyond the words of the statute. However, Rose fails to show any possible application to this case. In *Bollinger,* the plaintiff, having sustained a nonsuit in an earlier action for filing suit prematurely under the terms of an insurance policy, immediately brought a second suit on the same cause of action, which was dismissed on the ground that a shortened limitation period of the policy had expired. *Bollinger* held that, although section 355 by its terms did not apply, it should be held to apply (rendering the second action timely) because (1) the trial court had erroneously granted the initial nonsuit, (2) dilatory tactics by the defendant had delayed disposition of the first action, and (3) the plaintiff had at all times proceeded in a diligent manner. Rose relies on *Bollinger*'s statement that courts are not powerless to formulate rules of procedure where justice demands it. (*Bollinger, supra,* at p. 410.)

However, equitable tolling under section 355 does not apply to section 340.6 (fn. 1, *ante*) because "[b]y stating 'in no event' will the statute of limitations for legal malpractice be tolled unless the tolling provisions contained in the statute apply, the Legislature intended those tolling provisions to be exclusive." (*Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 156 [208 Cal.Rptr. 428], italics omitted.)

Moreover, even assuming *Bollinger*'s rule (*Bollinger, supra,* 25 Cal.2d 399) of equitable tolling could apply, it would not apply here. Thus, the Supreme Court has stated: "[T]he concurrence of the three factors present in *Bollinger* is essential to an application of the rule stated therein." (*Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 361 [142 Cal.Rptr. 696, 572 P.2d 755].) Thus, before the *Bollinger* rule of equitable tolling will apply, "(1) the plaintiff must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a judicial forum for resolution of the claim must be attributable to forces outside the control of the plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine . . . ." (*Hull v. Central Pathology Service Medical Clinic* (1994) 28 Cal.App.4th 1328, 1336 [34 Cal.Rptr.2d 175].) Here, Rose did not timely file his malpractice claim; there is no allegation that Hudson delayed disposition of the criminal matter; and neither section 355 nor *Bollinger*'s equitable tolling saves his lawsuit.

In his reply brief, Rose argues the complaint does not show on its face that it is necessarily untimely, but he fails to support his argument. He says his 10 years of incarceration should be deemed a legal disability under the doctrine of equitable tolling. However, in his brief, he fails to address the fact that section 352.1 (fn. 6, *ante*) places a two-year limit on tolling due to incarceration (which we have already factored into the equation concluding the complaint was untimely).

At oral argument, Rose's attorney argued section 352.1 is limited to claims against the government, because the legislative findings accompanying its enactment referred to the increasing number of civil lawsuits by prisoners against the Department of Corrections and its employees. (Stats. 1994, ch. 1083, § 1, pp. 6465–6466.) However, the statute itself contains no such limitation to claims against the government or governmental employees. Subdivisions (b) and (c) of section 352.1 refer to claims against the government (stating the statute does not apply to actions for which a governmental claim is required or to civil rights actions for nonmonetary relief). However, subdivision (a) of the statute, which we quote in footnote 6, *ante*, broadly applies to actions under chapter 3, section 335 et seq.—i.e., actions other than for recovery of real property, including legal malpractice actions under section 340.6—without restriction to actions against governmental defendants.

As we said some 24 years ago, in *In-Home Supportive Services v. Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720 at page 734 [199 Cal.Rptr. 697], "The search for statutory meaning must begin with the text." The footnote accompanying this statement provides, " 'For constitutional reasons, the ascertainment of legislative meaning necessarily focuses on the enacted statute and not on an unenacted expression of legislative will, however reliable. An unenacted utterance has force, if at all, only as part of

the proper context of the statute.' (Dickerson, The Interpretation and Application of Statutes (1975) p. 144; see also *Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476, 480 [191 Cal.Rptr. 893].)" (*In-Home Supportive Services, supra*, 152 Cal.App.3d at p. 734, fn. 15.)

The legislative history cited by Rose cannot change the plain meaning of the text of section 352.1.

We note section 352.1 has been applied in a legal malpractice case against a criminal defense attorney—*Carlson* v. *Blatt* (2001) 87 Cal.App.4th 646 [105 Cal.Rptr.2d 42] (though no contention was made in *Carlson* that § 352.1 was limited to suits against the government or governmental employees).

For all these reasons, we reject Rose's argument that section 352.1 applies only to actions against the government or governmental employees.

At oral argument, Rose also contended he should be allowed to amend his complaint to plead tolling of the statute of limitations under section 340.6, subdivision (a)(4): "The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (Fn. 1, *ante*.) According to Rose's counsel, he would amend the complaint to plead that Rose would have suffered reprisals at the hands of other prisoners had he filed his complaint while he was in prison. However, in our view, these allegations merely state a common occurrence that is a consequence of incarceration. Consequently, the allegations would invoke the tolling rule of section 352.1, not section 340.6, because section 352.1 is the more specific statute. (See *People* v. *Superior Court* (*Jimenez*) (2002) 28 Cal.4th 798, 808 [123 Cal.Rptr.2d 31, 50 P.3d 743] [general statute controlled by special statute].) We have already seen how the tolling allowed by section 352.1 does not help Rose.

Rose argues equitable tolling applies where, as here, the plaintiff, possessing several legal remedies, reasonably and in good faith pursues one remedy before attempting the other. Rose appears to be arguing that his pursuit of postconviction remedies in the criminal case tolled the limitations period on his civil action. This argument is contrary to *Coscia*'s holding (*Coscia, supra*, 25 Cal.4th 1194).

We conclude Rose fails to show grounds for reversal.

## DISPOSITION

The judgment of dismissal is affirmed. Hudson shall recover his costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1), (2).)

Hull, J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 24, 2007, S156047.